By the Court,

Cowen, J.
To the preliminary objection raised by the district attorney, viz. the writ of error must fail, because it appears on the face of the record that the term of confinement in the penitentiary to which the plaintiffs in error were sentenced has elapsed, and so the sentence passed upon them by the court below satisfied, there are two answers. They were not only sentenced to imprisonment, but each was also fined ; and it is not apparent on the record that the fine of either has been paid. If it were necessary, therefore, to warrant their calling on this court for a reversal, that they should show the immediate pressure of an unsatisfied judgment upon them, we see enough in the fines uncancelled of record. But the payment or satisfaction of an erroneous judgment against a party, can never be allowed as a bar to a writ of error, even in a case where- we must see that no restitution could follow the reversal as a legal consequence, and no costs be recovered. An erroneous judgment against him is an injury per se, from which the law will intend he is or will be damnified by its continuing against him unreversed. There may be exceptions to the rule, as in case of a nonsuit, no costs being awarded; (Monell v. Weller, 2 John. R. 8, 9;) (a) but a judgment on the merits is *256 conclusive between the parties, and; if not by direct, it may be followed by remote consequences actually injurious. In some cases of libel, an erroneous conviction at the suit of the people might, unless reversed, by forever concluding the defendant, materially affect the profits to be otherwise derived from the salo of a valuable literary work. There is no doubt, therefore, that the plaintiffs in error have a right to demand a consideration of the exceptions which they took to the proceedings of the court below.
The exception to the charge of the recorder was clearly ill taken; and so of the exception that he refused to charge as requested by counsel. And to some offers of evidence an obvious objection was suggested by the court below. The proposition, for instance, to establish hardness of the plaintiff towards the poor, dissoluteness in his morals, immorality in his principles, and habits of vice and calumny, by instances of conduct not detailed or alluded to in the book, were inadmissible, for the reason that all these were imputed as conclusions deducible from particular instances enumerated and arranged in the book with a *257 view to the establishment of those conclusions. Most clearly the defendants below had no right to depart in their proof from the circumstances they had set forth. They say, for instance, Yerren wrote and sent anonymous letters of a certain character; therefore, he was 'guilty of calumny and obscenity. To allow proof of other instances, such as defamatory and obscene conversations, would be to violate - the well settled rule, that to justify a slander, charging a specific oifence, you shall not be permitted to prove another, though of the same character.
Upon the same principle, I am also inclined to think, the court below were right in excluding the testimony which was offered, having a tendency to show that Yerren was an impostor. True, he is called an impostor in the book, not, as in other instances, by way of express conclusion from the circumstances; but the charge amounts to that in fair construction.
Several of the questions proposed to be addressed to Helie were, therefore, improper^ as having no relevancy to instances stated in the book, while others were entirely irrelevant, in all respects; and I think the whole were properly excluded on one or the other of these grounds.
There is, I apprehend, also another ground on which several of those questions were inadmissible. Some of them respected the naked admissions of Yerren—such as that he was an impostor, that he was in a particular situation at a certain place, that he had intrigues with ladies at France and Ferney, &c. The admissions were not in themselves facts, going to establish the vicious attributes imputed by the book or any others. In re■spect to such questions, it seems to me, therefore, the objection of the district attorney comes with great force, that they sought for naked declarations. Obscene or slanderous coversations, serious arguments against the truth of revelation, and the like, might have been pertinent ;(b) as we receive *258 arguments in favor of atheism, coming from a witness, to show his incompetency from defect of religious principle.(c) Such declarations are a part of the res gestee. But I am not prepared to concede that, when the people have instituted a criminal prosecution, they lie, in any case,- at the mercy of mere naked admissions made by the party injured, when they do not introduce him as a witness.
Whether farther testimony should have been heard in the cause after the proofs had been closed and the court below adjourned, touching Granger’s character, or any other question in the cause, was so entirely a matter of discretion with the court, that the defendants could not have been entitled to a bill of exceptions under any circumstances, on the ground of the court’s refusal to open *259 the proofs. (Philadelphia & Trenton Rail-Road Company v. Stimpson, 14 Pet. 448, 463.) (d)
But there was an offer to prove the good character of both Barthelemy and Collon. And it is truly said, by the counsel for these plaintiffs in error, that in answer to the first count, which was for a conspiracy, they have a right, if such be the fact, to complain that proper testimony has been rejected not only in respect to themselves personally, but their supposed co-conspirator. Proof of his innocence might have enured as proof of theirs. The offer, however, was the same in respect to Barthelemy, and whether offered as an answer to the charge of conspiracy or libel, I should think it by no means clear that character might not have been material in the view stated when the offer was made. The defendants below had a right to assume, for the purposes of the offer, that the jury would think the truth of some portion of the libel had been established; but that was not a full answer to either count. In order to make out a case of complete innocence, good motives and justifiable ends in the publishers were necessary, of which the jury are, by the constitution, made judges. (Art. 7, § 8, 1 R. S. 45, 2d ed.) Publication of the truth, and even conspiracy to publish the truth, from good motives and for justifiable ends would not be criminal; and, a certain line of character, as for good morals, great piety, or a laudable aversion to hypocrisy and imposture in all men, might form an important item in the defence against such a prosecution as this. But unfortunately for the plaintiffs in error, the offers came far short of any thing like what I have supposed. They were simply to show good character, not for ■ any moral attribute whatever, nor even a general character for good morals. The offers might have been intended, for aught we can see, of good character for skill in the defendants’ profession or calling. They were so indefinite as not to indicate a sort of character which could be relevant to the object avowed. *260 The rule applicable to the case will be found with its il lustrations, in 1 Phil. Ev. 177, and the notes, Cowen & Hill’s ed.
I am of opinion, therefore, that none of the exceptions .were well taken; and that the judgment of the court below must be affirmed.
Judgment affirmed.
I

 In the case cited, the plaintiff in error was nonsuited before a justice of the peace, and, as was held, erroneously; but as no costs were awarded against him, the court refused to interfere, either by way of affirmance or *256 reversal, saying, that the judgment below was incomplete. They speak also of their inability to restore the party to the state he was in when the nonsuit was granted; and that the object of the plaintiff in error was merely to throw a bill of costs on the defendant. In a case immediately succeeding the above, in the same volume, (Smith v. Suits, 2 John. Rep. 9,) the court held, that a certiorari will lie to reverse a justice’s judgment of nonsuit when costs are awarded. These decisions have sometimes been interpreted as maintaining the general proposition, that error will in no case lie to reverse a judgment of nonsuit, provided the plaintiff has not been injured by being subjected to the payment of the defendant’s costs. A doctrine the direct contrary of this seems to have been applied in the subsequent case of Lovell v. Evertson, (11 John. Rep. 52.) There, the action was tried in the common pleas, and the plaintiff was erroneously nonsuited. On error brought, the judgment was reversed, though there was no award of costs upon the record in the court below against the plaintiff; and this, upon the express ground, that the plaintiff in error was aggrieved “ by being defeated of his right of action in that suit, and of his costs for prosecuting the same.” Otherwise, where the plaintiff has submitted, to a non-suit in the court below. (Evans v. Phillips, 4 Wheat. 73. See also Van Wormer v. The Mayor &c. of Albany, 18 Wend. 169, 172, 173, per Walworth, Chancellor; and per Butter, J. in Kempland v. Macauley, 4 T. R. 430, 437.)

 In most cases, where the state of mind, sentiment, or disposition of a person at a particular period, become pertinent topics of inquiry in the course of *258 legal proceedings, resort may, and frequently must be had to his declarations and conversations. These seem to come in, under such circumstances, as part of the res gestee. An obvious instance is the case of alleged insanity. (See The United States v. Sharp et al., 1 Pet. C. C. Rep. 118; The State v. Scott, 1 Hawk’s Rep. 24.) The necessity of sometimes allowing a resort to this species of evidence, even as in favor of the declarant, was recognized and illustrated in Darby's adm’r, &c. v. Rice, (2 Nott & McCord, 596.) “ For instance,” say the court, (id. 599,) “ if it should become a question whether the party knew the multiplication table, it could only be established by hearing him repeat it: what he has said therefore must be resorted to, to prove that he knew it.” In lAghtner v. Wike, (4 Serg. Rawle, 203, 206, 207,) a witness swore that the testator had made confidential communications to him relating to the family affairs of the former; and the testator’s declarations, by which he showed suspicion of the witness’ honesty, were admitted in reply. These, said Tilghman, C. J. were acts—not merely hearsay. They showed a want of confidence, and the improbability that family concerns of a delicate nature would have been committed to the witness. So, in many cases, declarations of a person sworn as a witness may be given in evidence as evincing hostile and malicious feelings toward the party against whom he testifies, with a view of shaking his credit. (See Cowen & Hill’s Notes to Phil. Ev. 729, -730, 764, 765, and the cases there cited.)
It has been suggested that where a person confesses a crime for which another stands indicted, and surrenders himself to justice, such confession would be admissible in favor of the person indicted. (3 M.cCord's Hey. 232, note, pi. 12.) But quere. In Commonwealth v. Chabbock, (1 Mass. Rep. 144,) such a confession was held mere hearsay, and inadmissible.

 See a collection of cases on this subject in Cowen & Hill’s Notes to Phil. Ev. p. 63.

 See Ford v. Niles, (1 Hill, 300 to 302, and note (a).)